Our last case this morning is Bernal v. NRA Group, LLC, Case 17-3629. Mr. Phillips. Good morning, Your Honor. Good morning. May it please the court, counsel. We had a whole broad range of cases this morning. This one's about debt collection. And as you tried to root the arguments in the other cases, this one rises and falls on the statute, express statutory language, and the contracted issue here. I'll focus on 1692F1. That statute says you can't add anything to the amount of debt you're seeking to collect unless it's expressly authorized to be the agreement or permitted by law. Expressly authorized is the important term here. The contracted issue here, which was drafted by NRA's client, is a bit of a mess. It says, if you default, we can try to collect the amount due plus costs, including reasonable attorney's fees, incurred by us in attempting to collect the amount due. Now, what does that agreement not do? That specific contractual phrase doesn't mention anywhere in there expressly collection agency fees or costs. There's no mention of a percentage-based collection fee. There's no mention, as there was in this case, that the debt collector could hire one debt collector to hire another debt collector, which is what happened here. Here, NRA hired a company called, or not NRA, Six Flags hired a company called AR Assist, which agreed to charge Six Flags 5%, and they, in turn, hired another collection agency, the defendant, to collect, and they added on another fee. So there's no mention in there expressly that you get to hire two collection agencies, one adding a fee on top of another. There's also no mention in there expressly that, based on the age of the debt, the collection fee would go up. So in this case, the agreement that they entered into with AR Assist had the debts categorized by buckets. If you were this late, you were in this bucket. If you were this late, you were in that bucket, and so on and so forth. Are those based on collectible? Well, age of the debt, I don't know if it's based on collectible, but I think probably the rationale is the older the debt, probably it's a little bit more uncollectible or more difficult to collect. That's not in the record, but that's based on my experience, that generally the older the debt, less likely to just collect, because certain things happen, Judge. People move. They die. They go bankrupt, things of that nature. They lose contact with the debt and become less attuned to collection activities. Those are reasons why you may have buckets. But here, it's nowhere in the contract. It's not expressing in the contract any of these things. There's nothing about a collection agency, nothing about a percentage fee, zero. That is the biggest problem they have. Well, there's no limitation on that language. I'm sorry, Judge. There's no limitation on the language. Right, but it's not express. Right, but it's not limited either. That's correct. Your suggestion is because collection agencies aren't mentioned, they're excluded, and that doesn't follow. No, but it would follow that. Actually, I think it is. You didn't mention a collection agency here at all. Unlike the case of Seeger v. AFNI that this court addressed where Singular specifically mentioned collection agencies and attorneys collecting the debt and reasonable fees, and even though there was a contract that said you could charge 33% collection agency fees up to that or for attorneys' fees, this court said no, you can't do that because you, AFNI, bought the debt. That's a debt buyer situation. That's very different than what we have here. We have a collection agency that's been hired by the creditor to collect for the creditor, so it's very different. Well, not really, Judge, because AFNI was both. AFNI was also a debt collector, and the record in AFNI and Seeger AFNI was if it had gone to them, they could have charged 33% if they were acting as a debt collector. But because they bought it, they were both. The case involved a debt buyer. We don't have a debt buyer here. We have a collection agency acting as a collection agency, charging the creditor this percentage fee to collect the debt. So that's a fee incurred by the creditor. Right, but in Seeger versus AFNI, they were both. They could have been both. They were acting as a debt collector in that case, but they also did collections in two. The premise of the case is that they were a debt buyer. They were collecting on their own account, not collecting for a creditor. Right, and in this case, they didn't even charge the correct fee, if your honors think they could charge a percentage-based collection fee. Here they charged 16.19%. How they got that number, nobody knows. Less than they were entitled to. Right, which left the plaintiff and the class, subject to owing more money still, to Six Flags, because if you say they could charge this percentage-based fee, then if anyone paid it, they were subject to further collection activities for the remainder of the fee. But it's clear the wrong amount was stated. In Bernal's case, the testimony was he would have been in the bucket that was 20 plus 5%. So he should have been 25%. For some reason, we asked Mr. Cusick, the defendant's president on standing. He had no idea why they had this 16.19% fee. That sounds kind of low, actually. It depends. I've seen fees as low as 10%. I've seen this 33%. Usually it's based on different factors, such as are you the first collector in, second collector in, third collector in, tertiary is the fourth collector in. The contract allows recovery of any costs. That's a very broad term. Right, and there are no costs here. When the letter was sent out, Six Flags had no costs because it was a contingent fee. Six Flags literally had no costs because if it was unsuccessful, no one had to pay. That implies some sort of a temporal limitation, and there isn't a temporal limitation in the contract. Well, it's not expressed in there either, and that's the problem. There's no express authorization for this. Now, you might want to reform the contract to come to a more sensible result, but that's not allowed under 1692F1. You have to disagree with two other circuits, Cogettan in the 8th and Bradley v. Franklin in the 11th, to reach the result that was reached here. The district court just did that. He said, I don't care about those two decisions. I want to look at some other decisions that didn't have anything to do with it. He looked at two earlier decisions by this court where debt collectors were adding attorney's fees to the amount of the debt, and this court in those two cases, I think Judge Mannion was on one of the two, said, well, of course they can add the attorney's fees because the contract specifically said you can add attorney's fees, but even then this court said you had to break it out separately because in one they just lumped it in the amount of the debt, that was Fields v. Wilbur. There was also Singer v. Pierce. Here we don't have that. There was nothing expressly saying reasonable collection agent's fees, and even at the time the letter was sent, the debt collector here did not incur the 16.19% fee. They testified in a request to admit that the district court didn't like that the amount to send out the initial letter was $5 to $10. At trial, Mr. Cusick admitted that it only actually cost him $1 or less to have a mailing service send out the letters automatically. The fact that it brings you here and your opponent and everything else only means there must be a whole lot of these. I'm sorry, Judge, I didn't hear you. There must be a whole lot of these kind of debts because if you look at this one individually, I mean, come on, you're here, they're here. Sure, Judge, there are a whole lot of these debts. Whatever the precedent is what you're arguing about. These are nationwide debts. Six Flags is a big amusement company that has a place up in Gurnee and down in St. Louis and in Texas. That's why they're called Six Flags. They supposedly have six states that have the flags up. They're nationwide. We focus on a class of Illinois residents. In fact, Six Flags cured this problem. In the record is the argument we made and also in the summary judgment proceedings where we showed that they fixed this by saying, you agree to pay up to a 50% collection fee. So it's not hard for them to fix, and it's already been fixed. In fact, throughout the industry, in my experience, most creditors have fixed this. If you have a cellular phone bill, go online, you'll see what your agreement says. You've agreed to pay up to a 33% collection fee across the board. Mr. Phillips? Yes, Your Honor. I've just gone back over your brief, and I want to make sure I understand the real basic thrust of your complaint here to us today. Are you concerned with the vagueness of the term? Are you arguing that the term was misleading? Is that your argument? Or are you arguing that it was misleading because the amount was not set at the time the letter was sent? Or are you arguing that it was really the cost incurred by a third-party debt collector? Okay, if we're focusing on the term cost, I don't say it's misleading. I say it isn't specific enough. Okay. It doesn't put one on fair notice that the cost would include a collection agency even. Okay. If they'd even mentioned a collection agency, I'd have a much harder row to hoe here. I mean, then I'm arguing about is 33% reasonable. But if they even said collection agency, cost really is their internal cost. I think this is much, and I disagree with Judge Sykes on this, I think this is very similar to what you looked at in Seager-Affney. Because of the way they limited this language, they're stuck with whatever their out-of-pocket costs were, and they didn't produce anybody from Six Flags to come up and say, well, our actual cost is X, Y, and Z. The 11th Circuit thought we were in sync with them, at least on this, didn't they? I see my time's up. Unless Your Honors have some further questions. You can answer Judge Ripple's question. Okay. Could you repeat it for me, Judge? The 11th Circuit thought that they were in sync with us, didn't they? Absolutely. They cited both Cogettan and Seager, and they gave examples of two different contracts. There were two plaintiffs in Bradley v. Franklin. There was a plaintiff named Calma, and in there they mentioned that there would be a collection agency and a percentage fee. And then Bradley himself, similar circumstances, but they never mentioned a collection agency or any percentage. So for those reasons, we think the district court should be reversed. This is a pure issue of law. It really doesn't matter what happened at the trial, because it was really an issue of law. It's that contract, let them charge a percentage. Thank you, Your Honors. Thank you. Thank you. Mr. Hoffman? May it please the Court. My name is Herman Hoffman, and I represent NRA, the appellee in this case. As Your Honors have already pointed out, the key to this case is the operative language in the contract. Now, counsel for appellant cited, quoted part of that language, but the entire language here, which is on page 3 of our brief as well, states that Bernal agreed he could be assessed for any costs incurred by Six Flags, that's who US is, in attempting to collect some amount due or otherwise enforcing the contract. That's the operative language. And as Judge Sykes already pointed out, that's very broad, very inclusive language. The interpretation that appellant is putting forward here would essentially limit this language to mean that Six Flags could only use its own means in attempting to collect the debt. And that certainly can't be the case. Nationwide creditors, they always use these debt collection companies to collect costs that are due to them under the agreement. And so that's why Six Flags here, the contract has this broad, inclusive language. It states any costs, that term. It also states in attempting to collect amounts due, very broad language, or otherwise enforcing the contract. That's obviously what Six Flags and NRA were doing here. They're trying to get Bernal to pay the amounts that he owed them under this contract. And the FDCPA nowhere requires, in the statutory language that's at issue here, nowhere requires the creditor or the debt collection agency to operate under a specific list of types of costs that they can assess. That's nowhere provided. All we have to provide here is that all the debtor had to have was actual notice that he could be assessed these costs. And ultimately, at bottom, the interpretation that appellant is advancing here would basically mean that Six Flags couldn't assess any costs because none are expressly, none are specifically stated in the contract. It also leads to the second point here, and this court's decision in Wilber v. Fields' Wilber law firm touched on the second issue that appellant is advancing here as well, and that's that the contract authorized Six Flags and authorized NRA to assess costs that Six Flags would incur. That's the specific language here, and so any argument by appellant that these costs had to be incurred by NRA somehow, the contract doesn't say that. It says costs incurred by Six Flags. And this court already held in Fields that a creditor and a debt collector could specify both costs and attorney's fees that they intended to charge. That was the language on page 565 of the Fields' decision. In fact, on that same page, the court stated that the creditor and the debt collector necessarily had to specify costs that they intended to charge because the alternative would be potentially misleading under the FDCPA. The alternative would be that the creditor and the debt collector in this case first send a letter to the debtor saying, you owe this principal amount. Once he paid that, they would have to send a second letter saying, oh, and by the way, you also owe these costs. The FDCPA doesn't require that, and such an interpretation would put debt collectors like NRA between a rock and a hard place. And so that's why the solution to this case is what the district court held. What it reached after hearing the evidence at trial, after hearing the nature and the basis for this fee, which again was placed by Six Flags, the creditor, when it placed that account in collection, that's when it assessed that fee and it said to AR assist and to NRA, put this in your letter to the debtor. That's where that fee originated, this 16.19% fee. And so for a debtor, when he receives this letter, it obviously is not misleading, and it's what they want to know the amount up front. They want to know what they have to pay in order to pay this account off. And so that's exactly what NRA did in this case. They specified, they identified the principal amount, and they identified the costs that the debtor had to pay to pay off his account. And that's also exactly what Bernal agreed to in the contract. He said as soon as his debt was in arrears, as soon as he breached this contract, he could be assessed any costs. And that's what happened here. He breached the contract, Six Flags gave that amount with the costs to NRA, and NRA gave that to him in the letter. And as NRA also argued at the summary judgment stage, and also at trial, and also in its brief, this is precisely permitted by Illinois as well, Illinois law as well. Illinois law permits recovery of contingent fees, as long as that's stated in the contract, which it is here, and as long as also the creditor has a contract with the debt collection agency, which is the case here. And so contrary to what appellants stated in their reply brief, and I want to correct the record on that, we have always argued that what they did here was completely compliant with Illinois law as well. And as Judge Sykes also stated already, pointed out to counsel for appellant, the costs here, they reflect the amount that Six Flags has to pay AR Assist pursuant to its agreement with AR Assist. And the key operative language in that contract as well between AR Assist and Six Flags is that AR Assist must charge this 5% fee to Six Flags, and then also will charge the fee, in this case, which was 20%, based on the age of the debt that was placed in that bucket, and it will charge that. And so those were costs that Six Flags had. It was contractually obligated to pay it. There's no temporal limitation on the language in the contract that these costs had to have already been fixed in invoice. The contract doesn't say that that's required, and so Bernal has absolutely no basis in the contract to say that was required. You agree that we would be creating a circuit split with the 8th and the 11th circuits, both of which held that collection costs, are referenced in the operative contract between the debtor and the creditor. They don't include collection agency fees unless they specifically use the word collection agency fees. Absolutely not, Your Honor. There would be no circuit split, and that's because the contractual language is different. The contractual language in the 11th circuit case was that all it said was collection costs. And also the 11th circuit in that case said that language limits the debt collector to assessing its costs. The contract here states that the costs that may be assessed are costs incurred by the creditor, Six Flags. So that's the key difference. There's also a key difference in that case, the 11th circuit case. The circuit involved a creditor who, before the debt collector had even done anything in attempting to collect the debt, that's when the fee was already imposed. And so that's a key difference because here they had already sent the letter. They had already done the work. They had already subcontracted it. And for those two reasons, this court wouldn't create a circuit split. It's simply different contractual language, entirely different contractual language, and the same is the case with the Cojectin case, the 8th circuit case. In that one, the court once again read the contractual language, which is different, to hold that the costs that could be assessed were only the costs of the debt collector. Again, here the contractual language specifically precludes that. It says the costs that matter are the costs incurred by the creditor. And so this contract cannot be read to limit the costs to be assessed to only those of the debt collector. It's simply impossible. And so for that reason, this court would not be creating a circuit split. It would be simply following its precedent in the Singer case and the Fields case where it already stated that a debt collector and a creditor can assess costs, can specify costs that they intend to charge. And ultimately, the rule here, Your Honor, is going to hinge on the contractual language. And so NRA's approach here is simply to request this court to rule that charging a fixed percentage-based amount does not violate the FDCPA where the contract explicitly allows the debt collector and the creditor and the debtor to be assessed any costs incurred by the creditor in collecting amounts due or otherwise enforcing the agreement. Thank you. Thank you. Mr. Phillips, your time had expired. I'll give you a minute to sum up. Thank you, Judge. I just want to correct one thing. The counsel raised that it was allowed under Illinois law. And as we pointed out in our brief, that's just not at issue here. Footnote 4 of the district court's opinion said they conceded that it wasn't allowed under Illinois law. They can't raise it here. It's not allowed under Illinois law. They're stuck with the contract. Secondly, the floodgates argument that they can't possibly then collect fees. No, they can collect them. They just have to have an agreement that allows it. Third, compare the language at issue here. In Cogettan, the 8th Circuit's opinion is a one-paragraph opinion. They said, yep, we agree. The district court's opinion said a little bit more, yep, I agree with the report and recommendation. It's an immanent report and recommendation that sets out the exact language. It's the same language or similar language here, Bradley versus Franklin, similar collection language here that's improper. Well, all these contracts use vaguely similar language. They're all sort of in the same ballpark. The question is whether there are any material differences that make those two cases distinguishable. I would respectfully disagree that they're vaguely similar. The ones that are okay mention a collection agency or a percentage. The ones that are not okay don't mention a collection agency and don't mention any percentage. That's the distinction, Judge, that I think you need to draw here. Thank you. Thank you. Thanks to both counsel. The case is taken under advisement. And that concludes our calendar for today. The court will be in recess.